PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and Huff
Argued at Alexandria, Virginia

JAMES WESLEY AMONETT, JR.

                                                OPINION BY
v.        Record No. 1613-17-4                  JUDGE ROBERT J. HUMPHREYS
                                                FEBRUARY 19, 2019

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Bruce D. White, Judge

Alan J. Cilman for appellant.

Liam A. Curry, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


This appeal primarily involves three questions:  1) the degree to which promises of

leniency made by police officers render statements by the accused "involuntary," or constitute a

grant of immunity from a criminal conviction; 2) whether it is the court or a jury that makes that

determination, and 3) the effect at trial of a forensic witness' failure to appear and testify at a

preliminary hearing.

James Wesley Amonett, Jr., ("Amonett") appeals the March 15, 2017 jury verdict of the

Circuit Court of Fairfax County ("circuit court") convicting him of two counts of possession with

intent to distribute marijuana in violation of Code § 18.2-248.1.

I.  BACKGROUND

On July 27, 2015, Corporal Andrew Perry ("Officer Perry") of the Herndon Police

Department stopped Amonett's vehicle.  When Officer Perry approached the vehicle, he smelled

marijuana.  Officer Perry observed that Amonett appeared to be breathing heavily and was

nervous.  Investigating the odor of marijuana, Officer Perry searched Amonett's vehicle's center

console, where he found marijuana and associated paraphernalia. Officer Perry also found a backpack on the passenger side floor containing a safe which gave off a strong odor of marijuana. Detective James Passmore ("Detective Passmore") of the Herndon Police Department arrived at the scene to assist Officer Perry. Officer Perry and Detective Passmore told Amonett that "if he cooperated further he would possibly be able to go home that night without being arrested or charged." Detective Passmore presented Amonett with a consent to search form for the safe in the backpack, which Amonett signed. Inside the safe the officers found half a pound of marijuana. The officers transported Amonett to the Herndon police station.

At the police station, Amonett was appraised of his Miranda rights and was interviewed. During the interview, Amonett stated that he had received a two-pound parcel of marijuana from California, that the half pound found in the safe had been part of this shipment, and that the remainder of the shipment was at his residence. Amonett signed another consent to search form related to his residence where they secured the remaining marijuana along with a scale, paraphernalia, and $270 in cash.

Amonett was released and was not arrested and charged until October 2015. Amonett filed a written motion to suppress his statements to police. A hearing on that motion was held on February 24, 2017. No transcript of that hearing or statement of facts has been provided on appeal. On March 10, 2017, Amonett filed a written motion *in limine* to bar the testimony of Dr. Eugene Reichenbecher ("Dr. Reichenbecher") or in the alternative to dismiss the indictment based upon Dr. Reichenbecher's failure to appear and testify at the preliminary hearing. A hearing on that motion took place immediately before trial began on March 14, 2017, and the motion was denied. Amonett was tried by a jury on March 14-15, 2017. During the trial, Amonett testified that he made purchases of marijuana from California, receiving them through

the mail and distributed them, and that he had been in the process of distributing the most recent shipment when stopped by Officer Perry. Dr Reichenbecher, a forensic scientist, testified that he had chemically tested the seized material to verify that it was marijuana. The jury convicted Amonett, recommending a sentence of fourteen days in jail and a fine of $3,000. The circuit court sentenced Amonett accordingly on July 7, 2017. This appeal follows.

## II. ANALYSIS

### A. Assignments of Error

Although his arguments are convoluted and overlapping, Amonett assigns four errors to the circuit court. First, he asserts that the circuit court erred by failing to dismiss the indictments on the grounds that he had been granted immunity by the police; second, that the circuit court erred in failing to instruct the jury that they should acquit Amonett if they determine that the police had made a promise that he would not be prosecuted; third, that the circuit court erred in failing to suppress his statements to the police on the grounds that they were involuntary in that they were the product of an agreement that he would not be prosecuted; and fourth, that the circuit court erred in allowing the testimony of a chemist as an expert witness in the circuit court when that witness had failed to appear pursuant to a subpoena to testify at the preliminary hearing in the general district court.

### B. Whether Amonett's Errors Were Properly Preserved

Three of Amonett's four assignments of error concern an alleged "deal" not to prosecute between Amonett and the police. Following his indictment, Amonett made a motion to suppress the statements he made to Detective Passmore and Officer Perry as involuntarily obtained. At a pre-trial hearing regarding this motion, Amonett apparently argued, as he does on appeal, that the statements made by the police, "if he cooperated further he would possibly be able to go home that night without being arrested or charged," constituted an agreement not to prosecute.

However, while Amonett provided a transcript of the trial, he did not provide a transcript of the suppression hearing. The responsibility to provide a transcript rests with the appellant, and "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered." Rule 5A:8(b)(4)(ii). Without the benefit of a transcript or an agreed upon statement of facts, we cannot say that the circuit court erred in failing to suppress Amonett's statements. While the statement made by the officers to Amonett was discussed at trial, at that point the issue was the admissibility of Amonett's replies, not whether the officer's statements constituted a grant of immunity—an issue that should have been, and presumably was, decided in the pre-trial suppression hearing. We have no way of knowing what specific legal arguments were advanced nor what additional evidence was presented at the pre-trial hearing that formed the basis for the circuit court's decision. Moreover, although Amonett's first assignment of error alleges error on the part of the circuit court for failing to dismiss the indictment, the written motion filed in the circuit court only seeks suppression of the statements, not dismissal of the indictment. For these reasons, in the absence of a record of the pre-trial hearing, Rule 5A:18 bars our consideration of that assignment of error.

Regarding Amonett's third assignment of error, a fatal flaw emerges from Amonett's argument. Amonett is correct that "cooperation/immunity agreements can be somewhat analogous to plea agreements." Lampkins v. Commonwealth, 44 Va. App. 709, 724 (2005). However, Amonett fails to recognize the fact that cooperation/immunity agreements and plea agreements are entered into by *prosecutors*, not the police.

Amonett does not cite any authority extending the rules governing plea bargaining or grants of immunity to interactions with the police, instead he simply conflates police with

- 4 -

prosecutors in his argument. The respective roles of police and prosecutors are distinct, and they serve different functions and observe different restrictions.

In Rodgers v. Commonwealth, 227 Va. 605 (1984), similarly to the present case, the defendant claimed that his confession was involuntary as it had been procured by the police through a "promise of leniency." Id. at 616. Our Supreme Court noted that voluntariness must be examined through a consideration of the totality of the circumstances and whether the statement in question was "the product of an essentially free and unconstrained choice by its maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired." Id. at 609. The Court in Rodgers further noted that "the [United States] Supreme Court [has] made clear that even an outright falsehood by a police interrogator is but another factor to be considered in evaluating the totality of the circumstances." Id. at 616 (citing Frazier v. Cupp, 394 U.S. 731 (1969)). The promise of leniency our Supreme Court found no fault with in Rodgers was "[w]e're gonna [sic] submit this to the Commonwealth Attorney and then he makes the decision." Id. Here, there was no mention of the Commonwealth Attorney, but simply a statement that if Amonett cooperated he could possibly go home that night without being arrested. A statement, we note, that was strictly adhered to by the police officers who made it—Amonett did in fact go home that night without being arrested or charged.

Rodgers illustrates the fact that while police have discretion whether to make an arrest or not, it is the Commonwealth Attorney that makes the decision whether to prosecute. In the absence of clear evidence that a police officer is acting as an agent of the prosecution, an exercise of discretion by a police officer to forego an arrest does not control a prosecutor's discretion whether to prosecute any more than an arrest by police would.

The only scenario in which the police could have granted Amonett immunity from prosecution is if they were acting as agents of the Commonwealth Attorney. Agency is "a

fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P., 263 Va. 377, 384 (2002) (quoting Reistroffer v. Person, 247 Va. 45, 48 (1994)). While police and prosecutors work together and ideally do so smoothly and cooperatively, they are separate, independent governmental entities with differing missions and responsibilities. The police officers in this case were clearly not express agents of the prosecution, as there is nothing in the record before us to indicate that they were authorized by the Commonwealth Attorney to negotiate an immunity agreement on behalf of that office. Neither were the police officers apparent agents of the prosecution. "'[A]pparent or ostensible agency' . . . means '[a]n agency created by operation of law and established by a principal's actions that would reasonably lead a third person to conclude that an agency exists.'" Sanchez v. Medicorp Health Sys., 270 Va. 299, 304 (2005) (quoting Black's Law Dictionary 67 (8th ed. 2004)). There is no indication that Amonett interacted with the Commonwealth Attorney's office prior to his interaction with the police, and therefore did not have any basis for believing that the officers were acting as the prosecution's agents.

### C. Whether the Circuit Court Erred in Denying Amonett's Jury Instruction

Amonett's second assignment of error is essentially that the jury should have been instructed to return a verdict of "not guilty" if they determined that he had been granted immunity by the police. Determining whether such immunity agreements exist is "generally governed by the law of contracts." Hood v. Commonwealth, 269 Va. 176, 181 (2005) (citations omitted). "The question of whether [a valid] contract exists is a pure question of law." Spectra-4, LLP v. Uniwest Commercial Realty, Inc., 290 Va. 36, 42 (2015). As a question of law, the existence of a contract is not a proper question for submission to the jury. "It is

- 6 -

fundamental that the court must respond to questions of law and the jury to questions of fact." Gottlieb v. Commonwealth, 126 Va. 807, 812 (1920). Amonett, then, is at an impasse. If an agreement not to prosecute existed between himself and police, it was a contract, the existence of which was a matter of law properly resolved only by the circuit court at the pre-trial hearing, of which there is no record before us. In any event, it was not error for the circuit court to refuse to instruct the jury on that question.

    D.  <u>Whether the Circuit Court Erred by Allowing Dr. Reichenbecher to Testify</u>

Amonett's final assignment of error asserts that the circuit court erred by allowing Dr. Reichenbecher to testify at trial because he did not appear at a preliminary hearing despite multiple subpoenas from Amonett.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Abdo v. Commonwealth, 64 Va. App. 468, 473 (2015) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16 (1988)). In this context, an abuse of discretion occurs where the circuit court makes an error of law in admitting evidence. See Taylor v. Commonwealth, 28 Va. App. 1, 9 (1998).

Prior to trial, Amonett was presented with a certificate of analysis regarding the testing Dr. Reichenbecher had performed on the seized marijuana. Amonett subpoenaed Dr. Reichenbecher to appear at a preliminary hearing held in General District Court of Fairfax County on April 26, 2016. Dr. Reichenbecher did not appear, and the hearing was continued until July 26, 2016. Dr. Reichenbecher was again subpoenaed and again failed to appear. The hearing was continued a third time, to November 1, 2016, where Dr. Reichenbecher again failed to appear, at which point the hearing was conducted over Amonett's objection. Despite ignoring these subpoenas, Dr. Reichenbecher appeared as a witness for the Commonwealth at trial. Amonett filed a motion *in limine* when Dr. Reichenbecher was called, objecting that he was not

able to challenge the evidence at the preliminary hearing, per Code § 19.2-187.1(F), which provides, in pertinent part, that

> [t]he accused in any hearing or trial in which a certificate of analysis is offered into evidence shall have the right to call the person performing such analysis or examination or involved in the chain of custody as a witness therein, and examine him in the same manner as if he had been called as an adverse witness.

Addressing this argument requires us to engage in statutory interpretation. In doing so, we "have but one object, to which all rules of construction are subservient, and that is to ascertain the will of the legislature, the true intent and meaning of the statute, which are to be gathered by giving to all the words used their plain meaning." Lucy v. Cty. of Albemarle, 258 Va. 118, 129-30 (1999) (quoting Tyson v. Scott, 116 Va. 243, 253 (1914)). Further, we "constru[e] all statutes *in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious and just in their operation." Id.

Initially we note that Amonett alleges no procedural fault with respect to Code § 19.2-187.1(F) regarding the testimony of Dr. Reichenbecher at his *trial*. He essentially argues that Dr. Reichenbecher should not have been permitted to testify in his circuit court trial because of error he alleges occurred during his preliminary hearing in a different court. The criminal appellate jurisdiction of this Court is limited to reviewing error in the circuit courts of the Commonwealth. See Code § 17.1-405(1). Moreover, despite its inclusive phrasing, the language "in any hearing or trial," found in Code § 19.2-187.1 is inapplicable to a preliminary hearing. Code § 19.2-187.1(A) begins "[i]n any trial and in any hearing *other than a preliminary hearing*, in which the attorney for the Commonwealth intends to offer a certificate of analysis." That this caveat was intended to apply to Code § 19.2-187.1(F) is obvious from an *in pari materia* reading of other related statutes. For example, Code § 19.2-187(A) provides a different

- 8 -

procedure for introducing a certificate of analysis in a preliminary hearing, and then refers the

reader to Code § 19.2-187.1(A) as an alternative means of validation:

> In any hearing or trial of any criminal offense or in any proceeding brought pursuant to Chapter 22.1 (§ 19.2-386.1 et seq.), a certificate of analysis of a person performing an analysis or examination, duly attested by such person, shall be admissible in evidence as evidence of the facts therein stated and the results of the analysis or examination referred to therein, provided that (i) the certificate of analysis is filed with the clerk of the court hearing the case at least seven days prior to the proceeding *if the attorney for the Commonwealth intends to offer it into evidence in a preliminary hearing* or the accused intends to offer it into evidence in any hearing or trial, *or (ii) the requirements of subsection A of § 19.2-187.1 have been satisfied* and the accused has not objected to the admission of the certificate pursuant to subsection B of § 19.2-187.1.

Code § 19.2-187(A).

The disjunctive "or" as used in the statute provides the Commonwealth with the

opportunity of filing the certificate seven days prior to a preliminary hearing *or* satisfying the

Code § 19.2-187.1(A) requirements. Likewise, Code § 19.2-183(D), discussing procedure

during preliminary hearings, states that "[a]t any preliminary hearing under this section,

certificates of analysis and reports prepared pursuant to §§ 19.2-187 and 19.2-188 shall be

admissible without the testimony of the person preparing such certificate or report." Read

together, these statutes clearly indicate that at a preliminary hearing the Commonwealth may

introduce the certificate itself.[1]

Amonett does not assert that the certificate was not filed seven days in advance of the

preliminary hearing.

---

[1] Code § 19.2-187.1(F) prescribes no remedy for its violation. It is a directory statute stating that the accused "shall" have the right to call the scientist performing the analysis. "[A] 'shall' command in a directory statute carries no specific, exclusive remedy. Instead, it empowers the court to exercise discretion in fashioning a tailored remedy, if one is called for at all." Rickman v. Commonwealth, 294 Va. 531, 537 (2017). As such, exclusion of evidence is not the only remedy, nor even the most obvious remedy, for a breach of this statutory right.

Moreover, ample other evidence also showed that the substance confiscated was marijuana—indeed Amonett himself testified that it was "high quality" marijuana. The jury, in its fact-finding capacity, could certainly have taken Amonett at his own word in the absence of Dr. Reichenbecher's testimony and found that the substance was marijuana, rendering the same verdict and any potential error necessarily harmless. For all of these reasons, we find no merit to this assignment of error.

## III. CONCLUSION

Amonett provides neither case law nor, crucially, a sufficient record to support his proposition that promises of leniency made by the police constitute a binding immunity agreement requiring dismissal of the indictment or rendering Amonett's incriminating statements involuntary or otherwise subject to suppression. We also hold that the circuit court correctly concluded that the existence of such an agreement is not a proper question for the jury. Finally, we discern no error in the admission of Dr. Reichenbecher's testimony, which substantively echoed Amonett's own on the key point that the substance seized by police was marijuana. For these reasons, the judgment of the circuit court is affirmed.

Affirmed.