COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia

JAMES ERNEST LOGAN

v.      Record No. 0995-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE LISA M. LORISH
JUNE 7, 2022

FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
W. Revell Lewis, III, Judge

André D. Wiggins (Turner & Wiggins, PLLC, on brief), for
appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


After a two-day trial, a jury convicted James Ernest Logan of robbery, malicious wounding,

and use of a firearm in the commission of a felony.  On appeal, Logan challenges the sufficiency of

the evidence to sustain his convictions.  He also argues that the trial court abused its discretion by

admitting hearsay statements and expert testimony.  For the following reasons, we affirm.

BACKGROUND[1]

Quanta Mapp was robbed and shot at his home, 32510 Seaside Road, around 7:30 p.m.

on March 18, 2018.  Mapp could not see the faces of the three men who attacked him, but he was

familiar with their voices "from the neighborhood" and ultimately identified two of them as

Logan and Warren Byrd.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We state the facts "in the light most favorable to the Commonwealth, the prevailing party
at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292
Va. 380, 381 (2016)).

During the robbery, Mapp told his assailants that he knew who they were. In response to this, Byrd directed the others to shoot Mapp. After shooting him, and taking his cell phone, the three men ran into nearby woods where they had parked a vehicle. Mapp then went to his neighbor's house to call 911.

When Deputy Hargis arrived at Mapp's residence, he asked Mapp who had shot him, but Mapp did not provide any names because he was moaning, groaning, and in pain. Mapp testified that he was in "survival mode," did not want to talk to Hargis, and was concerned only with the "bullet in [his] head."

Investigator McPherson testified that he took photographs of the crime scene and collected evidence. He testified the address was 32522 Seaside Road. McPherson identified several photographs of Mapp's home as pictures he took at the scene that night.

On March 24, 2018, Mapp was at his mother's house when he had another confrontation with Logan and Byrd. After this, he met with McPherson and identified Logan and Byrd as two of the assailants who had robbed and shot him on March 18.

McPherson then interviewed Logan at the Sheriff's office. Logan told McPherson that he was Byrd's cousin and lived with Byrd's girlfriend. But Logan denied being present at the March 18 shooting; he claimed that he had been at his residence "north of Accomack" that evening and "never left."

After meeting with Logan, McPherson obtained a search warrant for cell phone "information" associated with Logan and Byrd's phone numbers on the dates surrounding the March 18 shooting. At trial, Andrea Mattia, a Verizon Wireless employee, identified two disks labeled with Logan and Byrd's cell phone numbers that she sent to McPherson. The disks recorded the dates and times of "inbound and outbound calls" and "text messages . . . sent

between the numbers" on the dates surrounding the shooting. The disks also contained the cell site location data for the phones.

Seven phone calls were made between Byrd and Logan's cell phones on March 18 and 19, 2018. Just a few hours before Mapp was shot, Byrd sent a text message to Logan that read, "Yo kidd dis . . . no playing yo. We going get this bread you want in or nah. But I'm tell you now it's really going down kidd." Logan immediately responded, "hell yea." Two minutes later, Byrd texted Logan, "Hey, get dressed in the right clothes. He on the way now." An hour and a half later, Byrd texted Logan, "Call me ASAP."

Logan objected to the introduction of these text messages, arguing they were hearsay. The Commonwealth countered that they were admissible as statements of a co-conspirator. The trial court overruled Logan's objection, concluding that the messages were obtained from Logan's cell phone, and the evidence established that Byrd participated in the conspiracy.

The trial court qualified Patrick Siewert as an expert witness on "cellular and cell detail record analysis and mapping." Siewert testified that he had analyzed Logan and Byrd's cell phone records and that cell phones generally connect with a cell site tower that provides the "best signal." That tower is often, but not always, the closest tower to the phone. Using "mapping" software, Siewert analyzed each phone's activity around the time of the March 18 shooting to determine their "general locations." Siewert created several maps, admitted into evidence, that demonstrated Logan's phone was near his residence north of Accomack from about 5:30 p.m. to 8:00 p.m. on March 18. Shortly after 8:00 p.m., Logan's phone moved south toward the crime scene. Siewert also testified that around the time of the shooting, Logan and Byrd's cell phones were "in the same vicinity," "using the same cell site and sector," and "in contact with each other."

Siewert based his analysis on the address of the crime scene as reported on the police report: 32522 Seaside Road. Although McPherson testified that he went to 32522 Seaside Road to collect evidence, Mapp's testimony and the photographs of his house demonstrated that he was at 32510 Seaside Road when he was shot. Logan objected to the admission of Siewert's exhibits and testimony, arguing they hinged on incorrect information about where the crime took place and that this "would change . . . how the evidence was to be interpreted." The trial court overruled the objection, finding that there was conflicting evidence of whether the crime occurred at 32522 Seaside Road or 32510 Seaside Road, and the conflict should be resolved by the jury. The court also instructed the jury that it should "listen to the evidence and . . . resolve in its deliberations any conflicts in the evidence." Following that ruling, Siewert testified that 32510 Seaside Road was "very close" to 32522 Seaside Road.

After the close of the evidence and argument by counsel, the jury convicted Logan of robbery, malicious wounding, and use of a firearm in the commission of a robbery.

ANALYSIS

A. Sufficiency of the evidence

Logan argues that the evidence was insufficient to identify him as one of the perpetrators because Mapp's in-court identification was inherently incredible and the remaining evidence "failed to exclude all reasonable conclusions inconsistent with guilt." Alternately, he argues that the evidence was insufficient to convict him of malicious wounding as a principal in the second degree because he did not take an "overt act in furtherance of either of the two alleged woundings." Neither of those arguments is preserved for appellate review.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. This rule "requires a

- 4 -

litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)).

"In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case" if he does not "introduce evidence on his own." *Commonwealth v. Bass*, 292 Va. 19, 33 (2016) (citing *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 84 (2010)). If a defendant presents new evidence after the trial court overrules his motion to strike, he "creates a new context" for assessing the sufficiency of the evidence. *McQuinn v. Commonwealth*, 20 Va. App. 753, 757 (1995) (*en banc*). Accordingly, to preserve the question of the sufficiency of the evidence, he must again move "to strike at the conclusion of all the evidence" or move "to set aside the verdict." *Bass*, 292 Va. at 33.

Logan acknowledges that he did not renew his motion to strike or move to set aside the jury's verdict after presenting evidence in his defense. But he maintains that his sufficiency arguments were preserved by his "renewed . . . motion . . . at the outset of the sentencing hearing." The record reflects that Logan moved the trial court to order a "new trial . . . [a]s a result of various discrepancies in the testimony of the victim and of the primary investigator" about the location of the offense, highlighting that the court "ended up having to give a cautionary instruction to the jury during the course of the trial." Logan acknowledged that the court found that the jury should resolve any conflict in the evidence but still asked the court to "order a new trial." Arguing at trial that a witness was impeached does not preserve for appellate review the separate question of whether a witness's testimony was inherently incredible as a matter of law. *Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022).

Logan also suggests that his closing argument to the jury "allowed the trial court to rule upon" the sufficiency of the evidence. In a jury trial, however, "closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law. Only a motion to strike the evidence accomplishes that objective in a jury trial." *Rompalo v. Commonwealth*, 72 Va. App. 147, 156 n.3 (2020) (quoting *Campbell v. Commonwealth*, 12 Va. App. 476, 481 (1991)). So the record establishes that neither of Logan's sufficiency arguments is preserved for appeal. Although there are exceptions to Rule 5A:18, Logan has not invoked them, and we do not do so *sua sponte*. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*).

## B. Statements of a co-conspirator

Logan contends that the trial court erred by admitting Byrd's text messages because, he argues, the statements were hearsay and the evidence failed to establish that he conspired with Byrd. He acknowledges that Mapp identified him and Byrd as two of the assailants but maintains that Mapp's testimony was inconsistent and rendered incredible by his delay in identifying the assailants to the police.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Amonett v. Commonwealth*, 70 Va. App. 1, 9 (2019). Under that standard, a "trial judge's ruling will not be reversed simply because an appellate court disagrees." *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017). Rather, a reviewing court can conclude that "an abuse of discretion has occurred" only when "reasonable jurists could not differ" about the correct result. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (internal quotation omitted).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c).

Generally, hearsay evidence "'is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay." *Pulley v. Commonwealth*, 74 Va. App. 104, 118 (2021) (quoting *Jones v. Commonwealth*, 71 Va. App. 597, 604 (2020)). One such exception provides for the admission of a "statement offered against a party" that was made "by a co-conspirator of a party during the course and in furtherance of the conspiracy." Va. R. Evid. 2:803(0)(E).

Generally, "there must be evidence establishing a *prima facie* case of conspiracy before the declarations of a co-conspirator . . . may be admitted into evidence." *Wilkerson v. Commonwealth*, 33 Va. App. 808, 820 (2000) (quoting *Floyd v. Commonwealth*, 219 Va. 575, 581-82 (1978)). *Prima facie* evidence is "evidence which on its first appearance is sufficient to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* (quoting *Babbitt v. Miller*, 192 Va. 372, 379 (1951)). Although the conspiracy generally must be demonstrated with evidence independent of the conspirator's hearsay statements, "[t]he order of presentation of evidence . . . is usually a matter left to the discretion of the trial court and, absent an abuse of discretion, will not be disturbed." *Id.* at 821 (quoting *Cirios v. Commonwealth*, 7 Va. App. 292, 300 (1988)). Accordingly, "when the record shows facts from which the existence of a conspiracy could reasonably be inferred, the case will not be reversed because proof of the conspiracy came at the wrong time." *Id.* (quoting *Floyd*, 219 Va. at 582).

"A criminal conspiracy is merely an agreement between two or more persons to commit a crime." *Id.* at 820 (quoting *Simpson v. Commonwealth*, 227 Va. 557, 567 (1984)). "Proof of an explicit agreement is not required and the requisite agreement may be established by circumstantial evidence." *Jones v. Commonwealth*, 279 Va. 295, 301 (2010) (quoting *Gray v. Commonwealth*, 260 Va. 675, 680 (2000)). Accordingly, when two or more people "by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a

view to its attainment, the [factfinder] will be justified in concluding that they were engaged in a conspiracy to effect that object." *Charity v. Commonwealth*, 49 Va. App. 581, 586 (2007).

The record evidence permitted an inference that Logan and Byrd conspired to rob Mapp. Mapp identified Byrd and Logan as two of the assailants who approached him—armed and masked—and demanded his property at gunpoint. Mapp, who knew Logan and Byrd "from the neighborhood," recognized their voices. *See Opanowich v. Commonwealth*, 196 Va. 342, 352 (1954) ("It is generally held that a person may be recognized and identified by his voice if the witness is acquainted with it."). After the incident, the three men fled into the woods together, where they had parked a vehicle. This circumstance permitted the jury to infer that the three assailants were acting in concert and planned the criminal enterprise.

Although Mapp did not identify his perpetrators until six days after the shooting, it is well-established that a victim's delay in reporting details of an incident does "not render his testimony inherently incredible as a matter of law." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991). Instead, a factfinder is "entitled to attribute such significance as it deem[s] appropriate to [such a] delay." *Id.* Moreover, a "credible explanation" for a delayed report weighs against a finding that the testimony is incredible. *Willis v. Commonwealth*, 218 Va. 560, 563 (1977). Mapp explained that his delay in identifying his assailants was partly attributable to his physical condition after suffering gunshot wounds.

We have also held that a witness's testimony was not inherently incredible when it was corroborated by other evidence. *Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019). The cell phone location data for Logan and Byrd's phones demonstrated that around the time of the shooting, Logan's phone left his residence north of Accomack and travelled toward the crime scene. In addition, Logan and Byrd's phones were "in the same vicinity," "using the same cell site and sector," and "in contact with each other." The cell phone location data independently

established that Logan and Byrd were together on the night of the shooting; and it corroborates Mapp's identification of Logan and Byrd as two of the assailants.

Finally, Logan falsely told McPherson that he was at his home on the evening of the March 18 shooting and "never left." "A false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge." *Covil v. Commonwealth*, 268 Va. 692, 696 (2004). The cell phone location data for Logan's phone contradicted his statements to McPherson that he "never left" his residence on the night of March 18. Thus, the factfinder could "draw the reasonable inference that his explanation was made falsely in an effort to conceal his guilt." *Id.*

In sum, the evidence established a *prima facie* case of a conspiracy between Byrd and Logan to commit a crime against Mapp. Accordingly, the trial court did not abuse its discretion by admitting Byrd's text messages.

## C. Expert Testimony

Logan argues that the trial court erred by admitting Siewert's "highly prejudicial" testimony and "illustrations" because they were based on an incorrect location of the crime scene. "[T]he admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion." *Midgette v. Commonwealth*, 69 Va. App. 362, 375 (2018) (quoting *Patterson v. Commonwealth*, 3 Va. App. 1, 11 (1986)).

"Expert testimony is generally admissible if it will aid the trier of fact in understanding the evidence." *Toraish v. Lee*, 293 Va. 262, 268 (2017) (citing *Commonwealth v. Allen*, 269 Va. 262, 274 (2005)); Va. R. Evid. 2:702(a)(1). To be admissible, "expert testimony must be based on an adequate foundation" and is "'inadmissible if it is founded on assumptions that have an insufficient factual basis.'" *Payne v. Commonwealth*, 277 Va. 531, 542-43 (2009) (quoting *Keesee v. Donigan*, 259 Va. 157, 161 (2000)). Challenges to an expert's conclusions based on "weaknesses in his

testimony" do not render the opinion inadmissible; rather, they go to the "weight of the evidence," raising "factual questions to be determined by the jury." *Tarmac Mid-Atlantic v. Smiley Block Co.*, 250 Va. 161, 167 (1995).

The record does not support Logan's argument that Siewert's expert testimony was based on an insufficient factual basis. Consistent with McPherson's testimony that he drove to 32522 Seaside Road in response to the 911 call, Siewert's analysis was centered on that address. Although Mapp testified the shooting took place at 32510 Seaside Road, the factfinder could resolve that discrepancy as arising from Mapp's flight to his neighbor's house after the shooting to call 911. In any event, Siewert testified that the two addresses were "very close" to each other.

Given those circumstances, Siewert's testimony and exhibits showing that the "general location" of Logan's phone moved from his residence north of Accomack toward the crime scene on the night of the shooting was not based on an inaccurate factual premise. The record demonstrated that the addresses were "very close" to each other, and Logan's phone moved away from his home and south toward the crime scene, contrary to Logan's statements to McPherson. Even if the above inconsistency undermined Siewert's expert opinion, the matter was properly submitted to "the jury [to] determine the weight to be given" to his opinion. *Id.* Accordingly, based on the record before us, we hold that the trial court did not abuse its discretion by admitting Siewert's testimony.

CONCLUSION

For these reasons, Logan's convictions are affirmed.

*Affirmed.*