COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia


KEITH ELWOOD HARGROVE

                                                                    OPINION BY
v.        Record No. 1351-21-2                    JUDGE MARY GRACE O'BRIEN
                                                                    MAY 2, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
B. Elliott Bondurant, Judge

Ivan D. Fehrenbach (D.R. Dansby, Ltd, on briefs), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Keith Elwood Hargrove (appellant) of first-degree murder, attempted

robbery, armed burglary, discharging a firearm in an occupied building, conspiracy to commit

burglary, conspiracy to commit robbery, and three counts of using a firearm in the commission of a

felony.

Appellant contends that the court erred by denying his motion for a separate trial from his

co-defendant's. He also challenges evidentiary decisions admitting his previous convictions and

excluding testimony regarding his financial situation and cell phone use. Finally, he argues that the

evidence was insufficient to prove he "participated in the crime[s]." For the following reasons, we

affirm appellant's convictions.

BACKGROUND[1]

O.A., an eight-year-old child, was shot and killed during a residential burglary and attempted robbery on January 21, 2019.  O.A. lived with his father, Orlando Anderson, and his paternal grandmother, Linda Anderson, in King William County.  In December and January, Anderson had posted on Facebook that he won "thousands" of dollars in the lottery.

On the night of January 21, O.A. and his grandmother were asleep in her bedroom, and Anderson was in his room.  At approximately 11:30 p.m., Anderson heard a loud noise and discovered that two masked intruders had broken into his home.  He grabbed a shotgun and attempted to shoot, but his gun jammed.  Anderson heard the intruders fire "about six" shots at him before they turned and fled.  He chased them outside and managed to fire one round from his shotgun.  As he returned inside, Anderson heard Linda yell that O.A. had been shot.  Anderson and Linda rushed O.A. to the hospital, where he later died from a single gunshot wound to the head.

During an investigation of Anderson's home, police recovered, inter alia, two .40 caliber shell cartridge casings and two spent bullets.

Appellant was arrested in Richmond for unrelated drug offenses nine days after the crime.  During his arrest, police found a .40 caliber Smith & Wesson handgun in his possession.  He was charged with possession of heroin with the intent to distribute as a third offense, possession of oxycodone with the intent to distribute, and possession of a firearm by a felon.  Appellant entered a no contest plea to the charges and was subsequently convicted.  A forensic examination determined that the two .40 caliber cartridge casings and one of the spent bullets recovered from Anderson's home were fired from the handgun in appellant's possession when he was arrested.

---

[1] On appeal, we state the facts in the light most favorable to the Commonwealth.  *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021).  In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence.  *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

The police also seized a Samsung cell phone from appellant during his arrest. Appellant admitted to police that it was his phone. A data extraction revealed "selfies" of appellant, an associated email address of keithhgrove@gmail.com, and several internet searches made the day after the crime, including searches for "crime reports for King William County, VA." The data extraction also revealed that on January 21, appellant and Charles Coleman, his co-defendant, had exchanged several text messages about meeting that night and had discussed a planned "lick" or robbery.

FBI Special Agent Jeremy D'Errico used cell site records to track the movement of appellant's phone. Agent D'Errico testified that from 10:15 to 10:41 p.m. on January 21, appellant's phone was at a residence in Richmond on First Avenue, along with phones belonging to Coleman and Donnell Downey.[2] Around 11:00 p.m., appellant's phone traveled from First Avenue to King William County, and it was within a quarter mile of Anderson's home at 11:37 p.m. After this point, there were no records of the phone's location until it reappeared near First Avenue in Richmond at 12:31 a.m.

Appellant and Coleman were charged with the same offenses. Over appellant's objection, the court granted the Commonwealth's motion to join their cases for trial.

Both the Commonwealth and appellant filed motions *in limine* concerning the gun seized during appellant's Richmond arrest. The Commonwealth sought to introduce a sentencing order reflecting appellant's no contest plea to possessing the firearm as a felon and a certificate of analysis showing that appellant's gun was used in the murder. Appellant opposed the motion and moved to prohibit the Commonwealth from introducing "evidence of any previous conviction of [appellant]" and "any comment or reference whatsoever alleging a connection between [appellant] and the gun."

---

[2] At a separate trial, Downey was convicted of first-degree murder, conspiracy to commit burglary, conspiracy to commit robbery, burglary, attempted robbery, and three counts of use of a firearm in the commission of a felony.

Appellant argued that "[n]either [appellant's] felony record nor his particular conviction for possession of a firearm as a felon [were] relevant to the case at hand" because he only "pleaded guilty to possession of a firearm as a felon, NOT guilty to possession of a *specific* firearm as a felon." He also argued that "a guilty plea does not mean, for the purpose of this separate proceeding, that [he] was guilty of the crime charged" and asserted that "[d]efendants regularly plead guilty to offenses for which they are not culpable." At the hearing, appellant reiterated that his conviction for possessing the gun was "extremely prejudicial and irrelevant." The court granted the Commonwealth's motion, finding that the sentencing order was admissible to prove appellant's "possession of [the] gun" on January 21. Neither party asked the court to redact any references to appellant's drug convictions or the sentences he received, which were contained in the sentencing order.

At trial, Coleman's cousin Trevin Holmes[3] testified for the prosecution. He stated that, two weeks before the crime, he and Coleman had visited Anderson. Later that day, Coleman told Holmes that he planned to rob Anderson and talked about "life-changing money."

Holmes also testified that, on the day of the crime, he went to the First Avenue residence to buy marijuana and overheard a conversation between Downey and Coleman, also about "life-changing money." After appellant arrived, Holmes purchased some marijuana and left, leaving appellant, Coleman, and Downey at the residence.

The next day, Holmes learned that O.A. had been shot. Holmes saw that he had missed a call from appellant's cell phone, but when he called back, Coleman answered. Later that day, Holmes met Coleman at the First Avenue residence and asked about O.A. According to Holmes, Coleman "got real emotional" and said that "[i]t won't supposed to go down like that." Two weeks later, they spoke again about O.A.'s murder, and Coleman was "all tears." Coleman told Holmes

_____

[3] At Downey's trial, Trevin Holmes was identified as having the surname "Gresham."

- 4 -

what happened on the night of January 21, and Holmes recounted the confession at trial. He testified that Coleman admitted to kicking in the door of Anderson's home and that "there was a gun on the counter, but it was fake, so they tossed it." Coleman did not specify who tossed it; Coleman only "said [that] they tossed it."

Additional witnesses testified that Coleman confessed to the crime. Megan Jefferson, Coleman's ex-girlfriend, testified that Coleman told her "it wasn't supposed to happen" when she showed him a newspaper article about O.A.'s murder. Coleman later admitted to Jefferson that "there was a shootout." He told Jefferson that "they" saw a fake gun on a table, thought it was real, and "grabbed it when they ran out."

Kwumane Goodall, who was incarcerated with Coleman, testified that Coleman told him, "[T]hey was attempting to rob [O.A.'s] daddy, father." Goodall described his conversation with Coleman:

> [Coleman] had went to the house. And when he got there, they had kicked the door in to go in to rob—to rob [Anderson].
>
> . . . .
>
> He said—he said that they had came from Richmond. He said that he had supplied the guns.

The Commonwealth also introduced the sentencing order showing appellant's convictions and sentence for the felony drug and firearm charges from his Richmond arrest. Appellant noted a "standing objection [to] everything related to this conviction," as well as his objection to the certificate of analysis linking the gun he had in Richmond to the crimes.

Appellant's girlfriend, Shbana Page, testified for the defense. The court sustained the Commonwealth's objection to questions about appellant's financial stability as "not relevant to robbery." Appellant later proffered that Page would have testified that appellant made $3,000 to $4,000 a night running card games and was doing well financially. Appellant also sought to

introduce testimony from Page that he "often" left his phone at the First Avenue residence and that "several times" in the past, Downey answered when she called appellant's phone. The court excluded the evidence because Page could not testify to the whereabouts of the phone on the day of the murder.

After the jury convicted appellant of each charge, the court imposed the jury's aggregate sentence of two terms of life imprisonment and 49 years' incarceration.

ANALYSIS

I. Joinder

Appellant contends his joint trial with Coleman was prejudicial because the admission of Coleman's confessions violated appellant's Sixth Amendment confrontation rights under *Bruton v. United States*, 391 U.S. 123 (1968). He also argues that the "simplicity of the case against Coleman necessarily tainted the jurors' perspective of [appellant's] culpability" and thereby prevented the jury from making a reliable judgment about his guilt or innocence.

Code § 19.2-262.1 provides that "for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses, to be tried jointly unless such joint trial would constitute prejudice to a defendant." *See also* Rule 3A:10(a). A criminal defendant must demonstrate that a joint trial caused "actual," "legally cognizable prejudice" to his rights. *Allen v. Commonwealth*, 58 Va. App. 618, 623 (2011) (first quoting *Randolph v. Commonwealth*, 24 Va. App. 345, 363 (1997); and then quoting *Zafiro v. United States*, 506 U.S. 534, 541 (1993)). "This occurs only when 'there is a serious risk that a joint trial . . . compromise[d] a specific trial right of one of the defendants' or when the joinder . . . 'prevent[ed] the jury from making a reliable judgment about guilt or innocence.'" *Id.* at 623-24 (quoting *Zafiro*, 506 U.S. at 539). "The underlying determinations of good cause and prejudice involve a case-by-case exercise of the trial

court's discretion" and will not be reversed on appeal absent an abuse of discretion, *id.* at 622-23, but "[t]his Court reviews de novo whether the admission of evidence violates a defendant's confrontation right," *Logan v. Commonwealth*, 299 Va. 741, 745 (2021).

A. Whether joinder violated appellant's Confrontation Clause rights

"The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.'" *Blackman v. Commonwealth*, 45 Va. App. 633, 638 (2005) (quoting U.S. Const. amend. VI, cl. 3). The United States Supreme Court held in *Bruton* "that at a joint trial, the admission into evidence of a *nontestifying* co[-]defendant's out-of-court confession violates the Confrontation Clause if the confession incriminates the other defendant." *Id.* at 639; *Bruton*, 391 U.S. at 135-37.

Appellant argues that the admission of Coleman's out-of-court confessions violated *Bruton* because Coleman's confessions to Holmes, Jefferson, and his fellow inmate involved "they" statements and "clearly incriminated [him]." These confessions, however, were not "testimonial" statements under *Crawford v. Washington*, 541 U.S. 36 (2004). *Bruton* and its core progeny were decided before the Supreme Court's decision in *Crawford*, which limited the application of the Confrontation Clause to "testimonial" statements. *See Bruton*, 391 U.S. at 123; *Richardson v. Marsh*, 481 U.S. 200 (1987); *Gray v. Maryland*, 523 U.S. 185 (1998); *see also Crawford*, 541 U.S. at 68-69.

*Crawford* represented a significant doctrinal shift from the framework under which *Bruton* was decided. Before *Crawford*, the Supreme Court evaluated Confrontation Clause questions using a "reliability" framework. *See Ohio v. Roberts*, 448 U.S. 56, 66 (1980) ("[W]hen a hearsay declarant is not present for cross-examination at trial, . . . his statement is admissible only if it bears adequate 'indicia of reliability.'" (quoting *Mancusi v. Stubbs*, 408 U.S. 204, 213 (1972))). *Crawford* abrogated the *Roberts* "reliability" framework and instead established the now-familiar

rule that only "testimonial statements" implicate the Confrontation Clause. 541 U.S. at 68-69

("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy

constitutional demands is the one the Constitution actually prescribes: confrontation."). 

Consequently, after *Crawford*, for a defendant to claim that his Confrontation Clause rights were

violated, he must first show that the challenged statements implicate the Confrontation Clause—i.e.,

show that the statements are testimonial. *See Walker v. Commonwealth*, 281 Va. 227, 231 (2011)

("[E]vidence that is not testimonial does not offend the [C]onfrontation [C]lause."); *see also Cody v.*

*Commonwealth*, 68 Va. App. 638, 657-58 (2018) ("[T]he first step in any Confrontation Clause

analysis involves determining whether the statements in question are subject to constitutional

protection under the Sixth Amendment. In that vein, we must determine whether any of [the]

out-of-court statements are 'testimonial' within the meaning of *Crawford* and its progeny."

(citations omitted)).

Because *Crawford* limited the scope of the Confrontation Clause to testimonial statements,

and the *Bruton* doctrine depends on the Confrontation Clause, it therefore follows that *Crawford*

limited *Bruton*'s protections to those statements that implicate the Confrontation Clause—

testimonial statements.

Indeed, the vast majority of federal circuit courts that have considered this precise issue have

also held that *Bruton* does not apply to nontestimonial statements.[4] *See United States v. Benson*,

957 F.3d 218, 230, 233 (4th Cir. 2020); *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012)

("Any protection provided by *Bruton* is therefore only afforded to the same extent as the

Confrontation Clause, which requires that the challenged statement qualify as testimonial."); *United*

*States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) ("Because it is premised on the Confrontation

---

[4] It appears that every circuit but the Seventh and Federal Circuit has considered this issue.
All have concluded that *Bruton* does not apply to nontestimonial statements.

- 8 -

Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements."); *United States v. Figueroa-Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010) ("It is . . . necessary to view *Bruton* through the lens of *Crawford* . . . ."); *United States v. Williams*, 506 F.3d 151, 156 (2d Cir. 2007); *United States v. Vasquez*, 766 F.3d 373, 378-79 (5th Cir. 2014); *United States v. Avila Vargas*, 570 F.3d 1004, 1008-09 (8th Cir. 2009); *Lucero v. Holland*, 902 F.3d 979, 988 (9th Cir. 2018); *United States v. Clark*, 717 F.3d 790, 815-16 (10th Cir. 2013); *United States v. Hano*, 922 F.3d 1272, 1286-87 (11th Cir. 2019); *United States v. Wilson*, 605 F.3d 985, 1017 (D.C. Cir. 2010).

Accordingly, *Bruton* does not apply here because appellant cannot show that the confessions he challenges were "testimonial" statements.

Out-of-court statements are "testimonial" if "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). "Because the test is objective, we focus 'not on the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individual's statements and actions and circumstances in which the encounter occurred.'" *Logan*, 299 Va. at 746 (quoting *Bryant*, 562 U.S. at 360). "[T]he relevant inquiry is the primary purpose of a statement *when it is made*, not at the time of trial." *Id.*

As for Coleman's confessions to his fellow inmate, the Supreme Court in *Davis v. Washington*, 547 U.S. 813 (2006), referred to statements made unwittingly to a government informant as "clearly nontestimonial." *Id.* at 825 (surveying pre-*Crawford* cases dispensing with unavailability and prior cross-examination requirements, characterizing such cases as involving

statements that were "clearly nontestimonial," and citing *Bourjaily v. United States*, 483 U.S. 171, 181-84 (1987), a case involving "statements made unwittingly to a [g]overnment informant").

Citing *Davis*, several federal circuit courts have also held that an "out-of-court statement of a co-defendant made unknowingly to a government agent is not 'testimonial' within the meaning of *Crawford*." *United States v. Dale*, 614 F.3d 942, 956 (8th Cir. 2010); *see United States v. Udeozor*, 515 F.3d 260, 269-70 (4th Cir. 2008); *United States v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008). The courts similarly reasoned that the declarants would not reasonably believe that their incriminating statements would ultimately be used at a trial and did not make them in anticipation of any future use in a prosecution. *See Dale*, 614 F.3d at 956; *Udeozor*, 515 F.3d at 269-70; *Watson*, 525 F.3d at 589; *see also United States v. Underwood*, 446 F.3d 1340, 1347-48 (11th Cir. 2006); *United States v. Hendricks*, 395 F.3d 173, 182-84 (3d Cir. 2005); *United States v. Saget*, 377 F.3d 223, 229-30 (2d Cir. 2004).

Here, "[i]t is hardly likely [that a reasonable person would have] expected [that] his confession to [his fellow inmate] would be 'used prosecutorially' at trial." *Blackman*, 45 Va. App. at 644 (quoting *Crawford*, 541 U.S. at 51). The primary purpose in making the statements was not to "creat[e] an out-of-court substitute for trial testimony"—there was no objective indication that his statements would later be used in his prosecution. *Clark*, 576 U.S. at 245 (alteration in original) (quoting *Bryant*, 562 U.S. at 358). Thus, the statements Coleman made to his fellow inmate were nontestimonial.

Coleman's confessions to Holmes and Jefferson were also nontestimonial. When Coleman confessed, a reasonable person would not have intended to create a statement "for use in an investigation or prosecution of a crime." *Sanders v. Commonwealth*, 282 Va. 154, 164 (2011). Instead, a reasonable person in Coleman's position was likely to confide in people he was close to, whom he did not anticipate would participate in his prosecution. *See Giles v. California*, 554 U.S.

- 10 -

353, 376 (2008) ("Statements to friends and neighbors about abuse and intimidation" are not testimonial.); *Crawford*, 541 U.S. at 51 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.").

Therefore, we hold that *Bruton* does not apply to nontestimonial statements, and the admission of Coleman's confessions did not violate appellant's Confrontation Clause rights.

### B.  Whether joinder prevented the jury from making a reliable judgment

Appellant next argues that the weight of the evidence and "simplicity of the case" against Coleman skewed the jury's perception of the case against appellant and thereby kept the jury from making "a reliable judgment about guilt or innocence." *Allen*, 58 Va. App. at 624 (quoting *Zafiro*, 506 U.S. at 539).

"That the prosecution may have a stronger case against one co[-]defendant than another does not, by itself, constitute actual prejudice. . . . [T]he mere assertion that a co[-]defendant was 'more deeply involved in the crime' does not constitute actual prejudice." *Id.* (quoting *United States v. Hargrove*, 647 F.2d 411, 414 (4th Cir. 1981)).

The same principle applies here.  Appellant argues that much of the evidence against Coleman, particularly his confessions, would have been inadmissible against appellant in a separate trial, creating a heightened risk of prejudice.  Appellant, however, cites no authority for this proposition, and we find it unnecessary to examine the evidence in detail to determine whether it would have been admissible in a separate trial.[5]  Although "prejudice may result when evidence

---

[5] We note that out-of-court statements made by a defendant's co-conspirator "during the course and in furtherance of the conspiracy" are not excluded by the rule against hearsay.  Va. R. Evid. 2:803(0)(E); *see Pulley v. Commonwealth*, 74 Va. App. 104, 118-19 (2021).  Therefore, appellant's underlying premise—that all the evidence against Coleman would have been inadmissible against appellant in a separate trial—is questionable and cannot automatically support his claim of prejudice.

inadmissible against a defendant, if tried alone, is admitted against a co[-]defendant in a joint trial," the evidence admitted specifically against appellant fails to establish a sufficient "basis for concluding the jury was prevented from making a reliable judgment about his guilt or innocence." *Adkins v. Commonwealth*, 24 Va. App. 159, 163 (1997) (quoting *Barnes v. Commonwealth*, 22 Va. App. 406, 413 (1996)). This evidence included appellant's possession, nine days later, of the gun that had fired bullets at the crime scene; his possession and admitted ownership of the Samsung cell phone used to exchange text messages with Coleman referencing a planned robbery and arranging to meet at the First Avenue residence on January 21; forensic evidence showing that appellant's cell phone, along with phones belonging to Coleman, Downey, and Holmes, was indeed at the First Avenue residence on January 21; forensic evidence locating appellant's cell phone near Anderson's house later that night and then back at First Avenue; and forensic evidence showing that, the next day, appellant's cell phone was used to search for crime reports in King William County, where Anderson lived. The evidence against appellant also included Holmes' testimony that he went to the First Avenue residence on January 21 to buy marijuana from appellant, heard Downey and Coleman talk about "life-changing money" before appellant arrived, and ultimately left appellant with Downey and Coleman.

The evidence of appellant's guilt was ample, even setting aside the evidence against Coleman. "Thus, [appellant's] contentions fail to establish the requisite *actual* prejudice." *Id.* at 163-64 (emphasis added).

Upon our review of the record, we hold that the court did not abuse its discretion in permitting a joint trial.

## II. Admission of Prior Convictions

Appellant contends the court abused its discretion by admitting the sentencing order from his Richmond arrest that reflected his convictions for possession of a firearm by a felon and two

drug offenses.  The order also included appellant's sentences on each charge.  At the pretrial

hearing, appellant sought to exclude the order because it was "extremely prejudicial and irrelevant"

and could not properly be used to establish that appellant possessed the same gun used in the

January 21 crimes.  At trial, appellant reiterated his objection by noting "a standing objection [to]

everything related to this conviction."  He made no additional arguments and raised no additional

grounds.

Appellant now challenges the admission of the sentencing order under Virginia Rule of

Evidence 2:404(b), which prohibits evidence of other bad acts.[6]  He also argues, for the first time,

that the sentencing order "showed that [he] was a career criminal" because it reflected other

convictions and sentences and revealed to the jury that he is a felon.

Appellant did not make these arguments to the trial court.  At most, he argued that his

conviction for possessing a firearm as a felon was "irrelevant" to whether the gun he possessed at

his Richmond arrest was the same gun used in the January 21 crimes and was "extremely

prejudicial."  Appellant asserted that the Commonwealth needed to establish his possession of the

gun with evidence other than the sentencing order because "a lot of defendants plead guilty when

they are not guilty," and he suggested that his own plea was merely "a pragmatic decision."

Moreover, at no point did appellant alert the court that he objected to the sentencing order because it

---

[6] Under Rule 2:404(b),

> [E]vidence of other crimes, wrongs, or acts is generally not
> admissible to prove the character trait of a person in order to show
> that the person acted in conformity therewith.  However, if the
> legitimate probative value of such proof outweighs its incidental
> prejudice, such evidence is admissible if it tends to prove any
> relevant fact pertaining to the offense charged, such as where it is
> relevant to show motive, opportunity, intent, preparation, plan,
> knowledge, identity, absence of mistake, accident, or if they are part
> of a common scheme or plan.

showed two other drug convictions or request that any portion of the order be redacted. Finally, he did not argue that the sentences for the three charges constituted irrelevant and prejudicial evidence.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Rule 5A:18. "In light of the different arguments that the accused could present to the trial court, Rule 5A:18 requires the accused to *specifically* raise a legal challenge . . . to preserve that issue for appeal." *Dickerson v. Commonwealth*, 58 Va. App. 351, 357 (2011). A litigant must "adequately alert the trial court to both the relief being sought and . . . the basis for that relief," *id.*, and "the *precise* nature of the objection must be clear," *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329 (2021). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc).

Additionally, appellant's "standing objection [to] everything related to [the] conviction" at trial does not preserve the arguments he now sets forth on appeal. This Court has been clear that general, unspecific objections are insufficient to satisfy the requirements of Rule 5A:18. *Id.*

Appellant only preserved a challenge to the relevance of his conviction for possessing a firearm as a felon. As he argued to the trial court, he contends on appeal that the conviction was not relevant because "Virginia courts are not required to ascertain guilt before accepting a guilty plea" and "nothing in the guilty plea . . . admitted a connection to that particular gun." Yet, "in pleading no contest to [a] charge as set forth in the indictment, [a defendant] agree[s] or admit[s] that the facts set forth in the indictment [are] true." *Jones v. Commonwealth*, 42 Va. App. 142, 148 (2004) (en banc). Further, appellant's contention that "nothing in the guilty plea . . . admit[s] a connection to th[e] particular gun" is incorrect: the certificate of analysis connects him to the gun that was used in the burglary and murder. The conviction was highly relevant to prove appellant's identity,

presence, and involvement in the crimes, and therefore the court did not err in admitting the evidence.

### III. Limiting Page's Testimony

Appellant contends the court erred by limiting the testimony of his girlfriend, Shbana Page, concerning his financial stability and cell phone use and finding that it was not relevant.[7]

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Amonett v. Commonwealth*, 70 Va. App. 1, 9 (2019)). Under that standard, a "trial judge's ruling will not be reversed simply because an appellate court disagrees." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)). Rather, a reviewing court can conclude that "an abuse of discretion has occurred" only when "reasonable jurists could not differ" about the correct result. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

Under Virginia Rule of Evidence 2:401, evidence is relevant if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Through his evidence that he was financially secure, appellant was attempting to establish that he had no motive to commit a robbery. Although "lack of motive is generally admissible to prove lack of a reason or intent to commit an offense," appellant's proffered evidence would not have established that "logical tendency." *Valentine v. Commonwealth*, 28 Va. App. 239, 244 (1998). Page merely would have testified that at some unidentified point in time, appellant could earn thousands of dollars per night running unsanctioned card games. Further, evidence of

---

[7] Although appellant argues on appeal that excluding the testimony violated his constitutional right to call for evidence in his favor, he did not make this argument to the trial court and, therefore, he did not preserve it. Rule 5A:18.

appellant's financial situation was admitted on direct examination before the Commonwealth objected: Page testified that "financially," appellant "was fine." Thus, we do not find that the court abused its discretion in precluding appellant from introducing the additional evidence of his income and finances as proffered.

Appellant also argues that the court erred by not allowing Page to testify about his cell phone use, including that he "often" left the phone at the First Avenue residence and let Downey answer it "several times." Appellant was attempting to establish that he was not in possession of the cell phone on the night of the murder. Page, however, was unable to testify as to the location of the cell phone that night. Therefore, we find no abuse of discretion in the court's determination that Page's proffered testimony about the cell phone lacked relevance and was therefore inadmissible. *See Warnick*, 72 Va. App. at 263.

Based on our standard of review, we do not find that the court abused its discretion by limiting Page's testimony.

### IV. Sufficiency of the Evidence

Appellant argues that the circumstantial evidence did not establish that he participated in the crimes. He contends that he was convicted solely based on "guilt by association."

"When the sufficiency of the evidence to support a conviction is challenged on appeal, this Court must 'consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Ele v. Commonwealth*, 70 Va. App. 543, 548 (2019) (quoting *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (en banc)). "The trial court's judgment should be affirmed unless it appears that it is plainly wrong or without evidence to support it." *Id.* (quoting *Terlecki v. Commonwealth*, 65 Va. App. 13, 19 (2015)).

Circumstantial evidence is competent evidence, capable of sustaining a conviction. *See Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019). "[I]n a circumstantial evidence case, . . . the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (en banc). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Id.* (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). It is the factfinder who is "responsible for weighing the evidence. In that capacity, the factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017). Ultimately, the question is "whether any reasonable [factfinder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty . . . beyond a reasonable doubt." *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014) (second alteration in original) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)).

Each piece of evidence cannot be "scrutinized . . . in isolation;" rather, the evidence must be weighed "collectively." *Moseley*, 293 Va. at 466. Here, "a rational factfinder" could reasonably "find that the totality of the suspicious circumstances proved beyond a reasonable doubt" that appellant participated in the crimes. *Id.*

Appellant's possession of the same gun that had been fired at the crime scene is probative of his presence at the crime scene and that he participated in the shooting. *See Burley v. Commonwealth*, 29 Va. App. 140, 146 (1999) (noting the significance of a defendant's possession of the weapon used in a murder and finding that "[a]ny evidence that linked him to the weapon tended to make his guilt more probable"). Appellant does not contest that the gun was used during

the crimes, and he cannot contest that he possessed the same gun shortly thereafter—he entered a no contest plea to possessing the weapon that a certificate of analysis later linked to the January 21 crimes.

Appellant also admitted that he owned the Samsung phone seized from him when he was arrested in Richmond. His admission was corroborated by identifying information found on his phone. Moreover, it was reasonable for the jury to conclude that appellant possessed that phone on the night of January 21. Appellant used that phone to exchange text messages with Coleman that referenced a planned robbery and to arrange to meet that night at the First Avenue residence. Holmes testified that the men in fact met at the First Avenue residence the night of the crime. Forensic evidence established that appellant's phone—as well as phones belonging to Coleman, Downey, and Holmes—were all at that residence until 10:41 p.m. Appellant's phone was later tracked to a location about one-quarter mile from Anderson's home and was tracked back to the First Avenue address. The next morning, appellant's phone was used for several searches about crime reports in King William County, where Anderson lived.

In its totality, the evidence, considered in the light most favorable to the Commonwealth, was sufficient for the jury to find appellant guilty beyond a reasonable doubt. We will not disturb the jury's finding, and we affirm appellant's convictions.

CONCLUSION

For these reasons, we affirm appellant's convictions for first-degree murder, attempted robbery, armed burglary, discharging a firearm in an occupied building, conspiracy to commit burglary, conspiracy to commit robbery, and three counts of felonious use of a firearm.

*Affirmed.*